**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2723
_____

UNITED STATES OF AMERICA

v.

MICHAEL HEINRICH,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 1:17-cr-00013-001)
U.S. District Judge: Honorable David S. Cercone
_____

Argued: September 15, 2022

Before: KRAUSE, BIBAS, and RENDELL, *Circuit Judges*

(Filed: January 4, 2023)
_____

Samantha Stern                    **[ARGUED]**
FEDERAL PUBLIC DEFENDER'S OFFICE
1001 Liberty Avenue
1500 Liberty Center
Pittsburgh, PA 15222
        *Counsel for Appellant*

Adam N. Hallowell                    **[ARGUED]**
Laura S. Irwin
UNITED STATES ATTORNEY'S OFFICE
700 Grant Street
Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**BIBAS**, *Circuit Judge*.

Crime requires blame. Our criminal law avoids punishing people unless they act with blameworthy intent. But when the intended act itself is obviously wrong, it is blameworthy no matter why the actor did it.

Michael Heinrich undressed two preschool girls and took pictures of their genitals. He says that he had no sexual interest in children, claiming instead that he was trying to show children's purity and innocence. To support that claim, he wants to offer an expert report analyzing his own psychology. But that report is inadmissible because, under the law that he violated, his reason for taking the pictures is irrelevant.

To understand why, we must discern what the statute makes a crime and whether that crime is constitutional. As we read it, the statute punishes those who orchestrate objectively sexually explicit conduct involving a minor in order to take pictures of

2

that conduct. Heinrich did that. And defining the crime that way is constitutional: trying to expose children's genitals is in itself usually blameworthy. So we will affirm his conviction.

## I. HEINRICH UNDRESSES PRESCHOOL GIRLS AND PHOTOGRAPHS THEM

Heinrich was a longtime family friend of a couple. In early 2017, he was painting their basement. The couple had two granddaughters, aged four and three. The girls sometimes went down to their basement playroom while he was there.

At least twice, Heinrich photographed the girls' genitals. First, in mid-January, he took four photos of the four-year-old in footie pajamas that were unzipped to show her chest and genitals. He also took a video of her, focused on her chest and genitals, while telling her to "stay there, you're fine, just fine. You're very pretty, stay there." *United States v. Heinrich*, 2021 WL 630962, at *2 (W.D. Pa. Feb. 18, 2021).

About a month later, he returned, bringing the girls Valentine's Day gifts. This time, he tried to pull down the four-year-old's pants. Though she told him no, he tore them off anyway. Then he manhandled her into poses. For some photos, he held her down to take close-ups of her genitals. For others, he used his hands to spread her buttocks and genitals. He also photographed the three-year-old while she was bent over, revealing her buttocks and genitals. At dinner, the four-year-old told her grandparents what had happened. They called the police.

When police interviewed Heinrich, he admitted to taking photos of the girls but said they had been clothed. And though he also admitted to once wiping the four-year-old's bottom, he

3

said he had never touched her vagina. Presumably to prove his innocence, he let the police search his computers, cameras, and cell phone. Before the search, he told them that he had downloaded nude photos of other children.

During that search, police found the photos and video of the girls as well as the other child pornography. Though Heinrich had tried to delete the images of the girls, they were still stored on the devices. He was arrested and shown the photos and video, and he admitted that he had taken them. Based on the video and photos of the two girls, prosecutors charged him with fifteen counts of producing child porn under 18 U.S.C. § 2251(a) and one count of possessing child porn under § 2252(a)(4)(B).

Heinrich's defense is that he lacked the mental state required by § 2251(a). He says he was trying to show beauty and innocence, not (as the statute puts it) "sexually explicit conduct." As part of this defense, Heinrich tried to present an expert psychological report to show that he had no sexual interest in the girls or the photos. Instead, the report concludes, his "painful history as a 'damaged' child led him to capture on film what he inappropriately saw as images of beauty, purity, and innocence." *Id.* at *6.

The District Court excluded the report as confusing, misleading, and letting an expert improperly opine on the defendant's mental state. *Id.* at *9–16 (applying Fed. R. Evid. 403, 704(b)). Heinrich pleaded guilty to three counts of producing child porn and admitted responsibility for the other acts charged, but he reserved the right to appeal the court's eviden-

tiary ruling. We review the District Court's reading of the statute de novo and its evidentiary rulings for abuse of discretion. *United States v. Hodge*, 948 F.3d 160, 162 (3d Cir. 2020); *United States v. Bailey*, 840 F.3d 99, 117, 126–27 (3d Cir. 2016).

## II. THE ELEMENTS OF § 2251(a)

To decide whether the expert report is relevant, we must first parse the statute's text. Subsection (a) provides:

[1] Any person

> [i] who employs, uses, persuades, induces, entices, or coerces any minor to engage in, or
>
> [ii] who has a minor assist any other person to engage in, or
>
> [iii] who transports any minor in or affecting interstate or foreign commerce … with the intent that such minor engage in,

any sexually explicit conduct

[2] for the purpose of producing any visual depiction of such conduct … shall be punished as provided under subsection (e) ….

18 U.S.C. § 2251(a) (bracketed numbers, line breaks, and indentations added). Heinrich pleaded guilty under part [i] as we have labeled it, and that is the part of § 2251(a) that we usually refer to below.

Subsection (a) consists of two halves. Half [1] describes the actus reus, the unlawful acts required for the crime. Half [2]

5

adds a mens rea, the mental state that the defendant needed to have while doing those acts.

We take each half in turn. Although Heinrich's textual argument focuses on the second half, he makes a constitutional argument that depends on the first. So we begin by construing subsection (a) as a whole.

### A.  The first half of § 2251(a) requires that the defendant orchestrate sexually explicit conduct

1. *The active verbs require calculated action.* One cannot stumble into this crime. Section 2251(a)'s actus reus starts with six active verbs. The first two verbs, "uses" and "employs" (as a synonym for "uses"), require that the defendant engage in sexually explicit conduct, with the child as an active or passive participant. *See United States v. Finley*, 726 F.3d 483, 494–95 (3d Cir. 2013) (explaining that "a perpetrator can 'use' a minor to engage in sexually explicit conduct without the minor's conscious or active participation," even if the child is asleep); *United States v. Lohse*, 797 F.3d 515, 521 (8th Cir. 2015) ("[The defendant] quite literally used [the sleeping victim] as a sexual object in orchestrating the nine photographs. This is not a case of mere presence." (citation and internal quotation marks omitted)).

The other four verbs (plus "employs," when used in the sense of "hires") involve pressuring the child, physically or psychologically, to engage in sexually explicit conduct, whether alone or with the defendant or someone else. *See Ortiz-Graulau v. United States*, 756 F.3d 12, 19 (1st Cir. 2014). Congress used this wide variety of verbs to reach a broad range of activities involved in producing child porn. *See id.*

6

All six verbs also signal that the defendant must intend some resulting action. *Use*, verb (defs. II & 8b), *Oxford English Dictionary Online* (Sept. 2022) ("To put to practical or effective use .… With *to* and infinitive, expressing the end or purpose of the use."); *Employ*, verb (defs. 1a, 4a), *id.* ("To apply (a thing) to a definite purpose; to use as a means, instrument, material, etc.… To use the services of (a person) to undertake a task, carry out work, etc."); *Persuade*, verb (def. 2a), *id.* ("To urge successfully *to* do something; to attract, induce, or entice to something or in a particular direction. Also: to talk *into*, *to*, *unto* a course of action, position, etc."); *Induce* (def. 1), *id.* ("To lead (a person), by persuasion or some influence or motive that acts upon the will, *to* (*into*, *unto*) some action, condition, belief, etc.; to lead on, move, influence, prevail upon (any one) *to do* something."); *Entice* (def. 2a), *id.* ("To allure, attract by the offer of pleasure or advantage; *esp.* to allure insidiously or adroitly. Often const. *from, to* (a course of conduct, a place)."); *Coerce* (defs. 2a, 2b), *id.* ("To compel or force *to do* anything.… To force *into* (an action or state).").

Yet intending the resulting *action* does not include intending that action's *legal status*. *See Rosen v. United States*, 161 U.S. 29, 41–42 (1896) ("The inquiry under the statute is whether the paper charged to have been obscene, lewd, and *lascivious* was in fact of that character; and if it was … deposited in the mail by one who knew … its contents, the offense is complete, although the defendant himself did not regard the paper as one that the statute forbade to be carried in the mails." (emphasis added)); *Morissette v. United States*, 342 U.S. 246, 271 (1952); *Hamling v. United States*, 418 U.S. 87, 123–24 (1974); *Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513,

524–25 (1994); *McFadden v. United States*, 576 U.S. 186, 192, 196 (2015).

Indeed, courts have applied this action–status distinction to another statute with the same verbs. The Mann Act applies to a defendant who "knowingly persuades, induces, entices, or coerces any [minor] to engage in prostitution or sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). We and our sister circuits have consistently focused on the defendant's actions "that are designed to persuade the minor to commit the forbidden acts." *United States v. McMillan*, 744 F.3d 1033, 1035 (7th Cir. 2014) (collecting cases); *cf. United States v. Nestor*, 574 F.3d 159, 161 (3d Cir. 2009); *United States v. Shill*, 740 F.3d 1347, 1354–55 (9th Cir. 2014). It does not matter whether the defendant knew that the resulting act was "prostitution" or that he could be charged with a "criminal offense." By the same token here, the ordinary reading of the statute requires that the defendant intend the acts that are objectively sexually explicit. But he need not appreciate their sexual character or legal consequence.

On top of the six active verbs, the statute adds another verb phrase: the intended resulting acts must themselves be "engage[d] in." *Engage*, *Black's Law Dictionary* (11th ed. 2019) ("To employ or involve oneself; to take part in; to embark on."); *cf. United States v. Laursen*, 847 F.3d 1026, 1032 (9th Cir. 2017) (using "take part in" as a synonym for "engage in" when describing § 2251(a)'s elements); *United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010) (same); *United States v. Malloy*, 568 F.3d 166, 169 (4th Cir. 2009) (same).

8

All these verbs connote calculated action. The defendant cannot be a bystander. He must instigate sexually explicit conduct by the child, or by himself or a third party involving the child.

2. *"Sexually explicit conduct" also limits the crime.* What qualifies as "sexually explicit conduct" further narrows the acts that are criminal. It requires intercourse, masturbation, sadism, masochism, bestiality, or (as relevant here) "lascivious exhibition of the anus, genitals, or pubic area of any person." §2256(2)(A). And we have further refined "lascivious exhibition" by adopting the so-called *Dost* factors. *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989). Under *Dost*, juries must ask these six questions:

- Does the picture focus on the child's genitals?

- Is its setting sexually suggestive?

- Does it show the child posing or dressed unnaturally for his or her age?

- Is the child nude or partially nude?

- Does the picture suggest sexual willingness or coyness?

- Is the picture intended or designed to elicit the viewer's sexual response?

*Id.* At least two of these factors must be present, but not all of them need be. *Id.*

All these questions are objective. It does not matter whether the defendant subjectively intended the conduct or depiction to be "sexually explicit" or "lascivious." True, the sixth factor asks how the pictures were "intended or designed" to affect

9

viewers. But that phrase just tells us to ignore how a particular viewer reacted. "We must, therefore, look at the photograph, rather than the viewer." *Id.* at 125. "[T]he sixth *Dost* factor, rather than being a separate substantive inquiry about the photographs, is useful as another way of inquiring into whether any of the other five *Dost* factors are met." *Id.* In short, the sixth factor reminds us to look at the picture as a whole—an objective inquiry.

And though these factors might seem to sweep in apparently innocent conduct like medical photos or children at play, there are at least two built-in protections against that. First, "sexually explicit" and "lascivious" are ordinary, common-sense concepts. The *Dost* factors are simply helpful guidelines, not a checklist to be applied mechanically. *See United States v. Larkin*, 629 F.3d 177, 182 (3d Cir. 2010).

Second, the ultimate inquiry is holistic: the jury must consider the "overall content of the visual depiction, taking into account the age of the minor." *Id.* (internal quotation marks omitted). For medical photos, juries may consider that a photo focuses on a rash or other physical abnormality and that the pose was no more unnatural than needed to display the condition. And many photos of children at play do not involve using or inducing the minor to engage in anything. If a photographer does influence a minor's pose or behavior, the same holistic analysis should distinguish innocent beach or bathtub photos from child porn. *See United States v. Knox*, 32 F.3d 733, 750 (3d Cir. 1994); *Doe v. Chamberlin*, 299 F.3d 192, 196–97 (3d Cir. 2002) (finding a collection of beach photos non-lascivious).

10

In sum, §2251(a)'s actus reus requires proof beyond a reasonable doubt that the defendant engineered conduct involving a child that the jury, considering all the facts and context, finds sexually explicit.

**B. The second half of §2251(a) requires only that the defendant specifically intend to take a picture of the conduct that he orchestrated**

1. *"Such" means "that."* Now we turn to the second half of subsection (a), where Heinrich mounts his defense. To be guilty, a defendant must engineer the sexually explicit conduct "for the purpose of producing any visual depiction of *such* conduct." §2251(a) (emphasis added). Heinrich's statutory argument turns on the word "such."

Heinrich contends that "such conduct" means sexually explicit conduct as a category. He reads "such" to mean "of the character, quality, or extent previously indicated or implied." Reply Br. 10 (quoting *Webster's Ninth New Collegiate Dictionary* (9th ed. 1983)). Because "such conduct" refers back to "sexually explicit conduct" as a category, he argues, the government must prove that his *purpose* was to depict *sexually explicit* conduct, not "purity and innocence." Reply Br. 20. It is not enough that the girls' acts were objectively explicit; instead, he says he must have intended for the conduct he depicted to be sexually explicit. Under his reading, the explicitness inquiry is subjective.

Not so. "Such" in this statute means "that." It refers to the discrete acts described in the first half. *Such*, *Garner's Dictionary of Legal Usage* (3d ed. 2009) ("[W]hen used as a

11

demonstrative adjective to modify a singular noun, *such* typifies legalese," in part because of the misconception that it is "more precise than *the*, *that*, or *those*."); *Such* (def. 2), *Black's Law Dictionary* (11th ed. 2019) ("That or those; having just been mentioned.").

That is how the rest of the statute uses "such." Just seventeen words earlier, "such" is used to mean "that." Recall that part [iii] applies to anyone

> who transports *any minor* in or affecting interstate or foreign commerce … with the intent that *such minor* engage in, *any sexually explicit conduct* for the purpose of producing any visual depiction of *such conduct* ….

18 U.S.C. § 2251(a) (emphases added). The first use of "such" must mean "that." Heinrich's definition cannot apply there because there is no "character" of the minor: the statute refers to *any* minor. We presume that when Congress repeats the same word close together, it means the same thing each time. *See HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 141 S. Ct. 2172, 2177 (2021). That presumption is bolstered by parallel usage: both times, "such" modifies a noun that was previously modified by "any."

That is just the closest example. Section 2251 repeatedly uses "such" to mean "that." *See, e.g.*, § 2251(a) ("[a]ny person … such person"; "any visual depiction … such visual depiction"); § 2251(b) ("[a]ny parent … such parent"; "a minor … such minor"; "any visual depiction … such visual depiction"); § 2251(c) ("any visual depiction … such visual depiction"); § 2251(d) ("any visual depiction … of a minor engaging in sexually explicit conduct and such visual depiction is of such

conduct"; "[a]ny person … any notice … such person … such notice"); §2251(e) ("[a]ny individual … such person").

Finally, Heinrich's interpretation conflicts with our precedent and common sense. As noted, "sexually explicit" is objective. We do not ask whether a particular defendant was aroused. Doing so would risk criminalizing "[p]rivate fantasies" based on "otherwise innocent photo[s]." *Villard*, 885 F.2d at 125 (internal quotation marks omitted). Yet Heinrich would have us read a subjective inquiry into the statute, potentially tipping the scales against a different defendant. Whether a defendant took a sexual interest in the picture is irrelevant—for conviction or acquittal.

So Heinrich had to engineer the acts with the intent to take pictures of them. But he did not have to intend that the pictures be sexually explicit.

2. *Heinrich's counterarguments fail.* Heinrich says that if Congress had meant "that," it would have used "that." But he points to no statutory clues that distinguish "such" from "that." The two words can mean the same thing. So Congress was free to choose either one.

Nor does our reading make "of such conduct" surplusage. Without the phrase "of such [that] conduct," the statute could be read to punish taking a picture of *anything* once the defendant uses a child to engage in sexually explicit conduct. Though that reading would have been unnatural, Congress prevented any misunderstanding by requiring the picture to be "of such conduct."

13

Finally, the rule of lenity does not apply. Lenity kicks in only when "a reasonable doubt persists" even after judges have exhausted all the tools in their statutory-interpretation toolbox. *Moskal v. United States*, 498 U.S. 103, 108 (1990). But no such doubt remains here.

## C. Our precedent does not require more

Next, Heinrich claims that *Crandon v. United States* supports his reading of the statute. 173 F.3d 122 (3d Cir. 1999). He points out that *Crandon* involved a Sentencing Guideline with a purpose requirement worded like the one in §2251(a). But that case did not adopt his reading. Crandon argued that he had taken pictures to memorialize his love for the girl he had photographed, not to capture sexually explicit conduct. *Id.* at 129. True, we said this purpose was "arguably different from that proscribed by [U.S.S.G. §2G2.2(c)(1)]." *Id.* And we stressed the need to be sure "that the defendant's purpose was, in fact, to create pornographic pictures." *Id.*

Yet *Crandon*'s holding was deliberately narrow. We decided only that "some inquiry should have been made into Crandon's purpose, motivation, or intent." *Id.* at 129–30. We rejected the government's argument that "*any* person who takes [a sexually explicit] picture *a fortiori* has the purpose of producing a visual depiction of sexually explicit conduct, regardless of what the defendant may have to say about his or her state of mind." *Id.* at 129 (emphasis in original). That rejection was unremarkable: the Guideline requires that the defendant orchestrate the conduct *for the purpose of* producing the picture, not merely that it happened and the defendant then took a picture. And because Crandon had been in a months-long

relationship with the minor and had taken dozens of nonsexual photos, that purposeful link was less than clear. *Id.* at 125, 130. Against that uncertain backdrop, the district court had not considered his purpose *at all*. *Id.* So we could not decide whether he had the required purpose. And although we thought that Crandon's position might be "arguabl[e]," we notably left open "whether [his] distinction ultimately even makes any difference." *Id.* at 129–30.

Plus, *Crandon* was interpreting a Sentencing Guideline. Although its purpose requirement is similarly worded, we simply had no occasion to construe §2251(a)'s mens rea requirement. *Id.* at 128–29. At sentencing, courts have long considered purpose, motive, and myriad other factors. *See, e.g.*, 18 U.S.C. §3553(a). We will not read *Crandon* beyond the Guideline it was interpreting.

So the best reading of the statute's text requires that Heinrich must have actively engineered conduct involving a minor for the purpose of taking a picture of that conduct. And that conduct must in fact have been sexually explicit. But he need not also have intended that the act or the picture be sexually explicit.

### III. SECTION 2251(a) IS CONSTITUTIONAL

Fighting this conclusion, Heinrich claims that our reading of the statute conflicts with the Constitution in two ways: First, it ignores the presumption that crimes require criminal intent. And second, it is overbroad. Both arguments hinge on the same premise: if the crime reaches defendants who do not subjec-

15

tively see the acts as sexually explicit, it "criminalize[s] other-wise innocent conduct." Appellant's Br. 34 (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)).

These arguments fail. The presumption of criminal intent requires only that the defendant intend the conduct that the jury finds objectively sexually explicit. He need not also know that he is causing or photographing conduct that is sexual or meets the legal definition of "sexually explicit." And longstanding precedent dooms his overbreadth claim.

## A. The most straightforward reading of §2251(a) requires enough intent

Criminal guilt flows from a "vicious will." *Morissette*, 342 U.S. at 251 (quoting 4 William Blackstone, *Commentaries* *21). So to be criminal, "wrongdoing must be conscious." *Id.* at 252. This awareness puts a defendant on notice of his wrong-doing and is thus a cornerstone of criminal due process. *See Lambert v. California*, 355 U.S. 225, 227–30 (1957). As a rule, then, prosecutors must prove that defendants were aware of "the crucial element separating legal innocence from wrongful conduct." *X-Citement Video*, 513 U.S. at 73. A law that brands defendants as criminals without proof of that awareness raises "serious constitutional doubts." *Id.* at 78.

To avoid these constitutional doubts, we sometimes depart from the "most natural grammatical reading" of a criminal stat-ute. *Id.* at 68–69. Two types of criminal laws justify that departure.

First, there are statutes that omit any mental state. For those statutes, we supply "only that *mens rea* which is necessary to

separate wrongful from otherwise innocent conduct." *Carter v. United States*, 530 U.S. 255, 269 (2000) (internal quotation marks omitted). But §2251(a) expressly requires a mental state: "for the purpose of producing a visual depiction." So it does not fall into this category.

Second, for statutes that already require some mental state, we occasionally broaden "the scope of that provision." *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022). To define who is culpable, a mental-state requirement must apply to the particular fact that transforms "otherwise innocent conduct" into a criminal act. *X-Citement Video*, 513 U.S. at 72. If it does not, we read the requirement broadly enough to do so. *Ruan*, 142 S. Ct. at 2377.

Heinrich says we face this second situation. If §2251(a) requires only the purpose to take a photo, he says, then it does not require any mental state for the crucial element separating innocent from wrongful conduct. Put differently, he says that taking a photo of "*something* is not what makes the conduct 'wrongful.'" *Elonis v. United States*, 575 U.S. 723, 737 (2015) (emphasis in original). Instead, the sexually explicit "*character*" of the photo is what makes it criminal, and Heinrich argues that the statute's purpose requirement must also apply to that element. *Id.* at 739 (emphasis in original).

For some criminal statutes, Heinrich might have a point. But here, "sexually explicit conduct" comprises only clearly wrongful acts. So the most natural grammatical reading will do.

Subsection (a) already ensures that the defendant is aware of "the full significance of his conduct." *Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019) (internal quotation marks

17

omitted). Recall the series of active verbs and phrases. All the verbs connote action calculated to achieve a particular end. That end is a series of acts that objectively adds up to "sexually explicit conduct." So when the defendant "uses" a minor as a means "to engage in" the forbidden conduct himself or "induces" the minor "to engage in" the conduct, he necessarily acts knowingly.

The Constitution does not require more: "In some cases, a general requirement that a defendant *act* knowingly is itself an adequate safeguard." *Elonis*, 575 U.S. at 736 (emphasis in original). This is such a case. True, the "sexually explicit" character of the conduct is what makes it wrongful. But just as a defendant's ignorance of the law is no excuse, so he also need not know that the conduct is of a sexual nature or "lascivious." § 2256(2)(A)(v); s*ee Elonis*, 575 U.S. at 734–35; *McFadden*, 576 U.S. at 192, 196. Instead, once a defendant tries to engineer the "exhibition of the *anus, genitals, or pubic area*," he is already "alerted to the probability of strict regulation." § 2256(2)(A)(v) (emphasis added); *Staples v. United States*, 511 U.S. 600, 607 (1994).

Some conduct is obviously wrongful. We expect a defendant to know that he may not forcibly take money from a bank (even if he genuinely thinks the money is his). *Carter*, 530 U.S. at 269–70. Likewise, "one would hardly be surprised to learn" that he may not put children in lewd poses and photograph their exposed genitals. *United States v. Freed*, 401 U.S. 601, 609 (1971). That fits with how we treat sex offenses against children. Traditionally, a statutory-rape defendant must knowingly have sex but need not know that his victim is a child. *See Morissette*, 342 U.S. at 251 n.8; *see also United States v.*

18

*Tyson*, 947 F.3d 139, 146–47 & n.9 (3d Cir. 2020) (holding that § 2251(a) does not require knowledge of the victim's age). Sex acts, especially with people who might be children, are not run-of-the-mill interactions. The law thus requires defendants to learn their sexual partners' ages. So too here. Exhibiting a child's genitals is not commonplace, and it "falls outside the realm of the 'otherwise innocent.'" *Carter*, 530 U.S. at 269–70.

And a lesser mental-state requirement makes sense when defendants are in the best position to know the facts that make their conduct wrongful. That is how the Supreme Court distinguished the mental state required for shipping, distributing, and receiving child porn from that required for producing it. *X-Citement Video*, 513 U.S. at 72 & n.2, 76 n.5. The Court read "knowingly" in § 2252 to apply to all the elements of that crime to protect, for instance, unwitting mailmen who "knowingly transport[ ]" packages that happen to contain child porn. *Id.* at 69. We do not expect magazines and films to be criminalized, so merely transporting those items does not signal the need for caution. *Id.* at 71. Photographers, by contrast, see their subjects nude or semi-nude, pose them, and can verify their ages. *See id.* at 72 n.2, 76 n.5. So once they induce children to engage in sexualized conduct, they are more familiar with—and more culpable for—the acts that follow. "It thus makes sense to impose the risk of error on producers" of child porn. *Id.* at 76 n.5 (interpreting § 2251).

Similarly, one does not expect the government to criminalize speech—even speech that might be received as a threat. Thus, *Elonis* read a ban on communicating threats to require a defendant's awareness of "the threatening nature of the communication." 575 U.S. at 737–38. The Court worried that a

speaker could be unaware of his wrongdoing if he communicates something that is intended as a joke but received as a threat. *Id.* at 733. So, the Court insisted, he must have some mental state to communicate something threatening. *See id.* at 737, 739–40. Section 2251(a) is not analogous. The defendant should expect to be answerable for the acts that the statute criminalizes. So he need not appreciate the sexual "nature" of those acts to be aware of his wrongdoing.

At last, we return to Heinrich. The first half of subsection (a) effectively isolates wrongful conduct: the defendant must actively cause the minor to take part in conduct that the jury finds sexually explicit. So we need not warp the second half of the subsection. Heinrich had the intent required for both halves. As he admits, he intentionally posed the girls with their genitals exposed for the purpose of photographing them. That is enough.

### B. The statute is not overbroad

Heinrich also objects that § 2251(a) is overbroad because it reaches protected speech. But this argument fails too. To violate the First Amendment, the "statute's overbreadth [must] be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008) (emphasis in original). Heinrich bears the burden of showing substantial overbreadth. *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

This crime is not overbroad. It "precisely tracks the material held constitutionally proscribable in *Ferber*," that is, "material depicting actual children engaged in sexually explicit conduct." *Williams*, 553 U.S. at 293 (referring to *New York v.*

*Ferber*, 458 U.S. 747, 762 n.15 (1982)). Any risk of "chill[ing] some protected speech … is significantly outweighed by the Government's compelling interest in protecting children from child pornography." *Tyson*, 947 F.3d at 148; *accord Ferber*, 458 U.S. at 763–64.

## IV. THE COURT PROPERLY EXCLUDED THE EXPERT TESTIMONY

Now that we know what § 2251(a) requires, we can address Heinrich's precise evidentiary claim. Did the District Court err in excluding expert testimony suggesting that Heinrich photographed the girls to create art, not sexually explicit pictures? No, it did not. That testimony is irrelevant and risks confusing and misleading the jury.

"[E]vidence of mental abnormality [is admissible] on the issue of mens rea only when, if believed, it would support a legally acceptable theory of lack of mens rea." *United States v. Pohlot*, 827 F.2d 889, 905–06 (3d Cir. 1987). The report here does not disprove Heinrich's intent. It casts no doubt on his intent to strip the girls, pose them, and take their pictures. Rather, it addresses Heinrich's purpose for taking the photos. But that purpose is irrelevant to the statute.

In any event, the District Court properly construed the statute and excluded the report under Rule 403. The report dealt only with whether Heinrich thought that the photos were sexually explicit. If the court had admitted it, the jury might have mistakenly inferred that those subjective beliefs mattered. So the court properly excluded the report to avoid confusing and misleading the jury. And contrary to Heinrich's assertion, "rea-

sonable exclusion of evidence under the 'standard rules of evidence' does not violate" his constitutional right to present evidence. *Orie v. Sec'y, Pa. Dep't of Corr.*, 940 F.3d 845, 855 (3d Cir. 2019) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996)). Because Rule 403 suffices, we need not reach the court's other reason for excluding the report.

\* \* \* \* \*

Blameworthiness is the foundation for punishing crime. A defendant must have some mental state about the elements that distinguish guilty from otherwise innocent conduct. The defendant charged with producing child porn must both use a child to engage in sexually explicit conduct and intend to take pictures of that conduct. That intent is enough to screen out innocent conduct; scheming to expose a child's genitals and photograph them is not typically innocent. So the defendant need not also intend that the conduct or pictures be sexual in nature or sexually explicit. We will thus affirm.