**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1615
_____

UNITED STATES OF AMERICA

v.

JOHN ALEXIS JACKSON,
Appellant
_____

On Appeal from the United States District Court
of the Virgin Islands
(No. 3-19-cr-00015-001)
U.S. Chief District Judge: Honorable Robert A. Molloy
_____

Argued
May 16, 2024
_____

Before: JORDAN, SHWARTZ, and BIBAS, <u>Circuit Judges</u>.

(Filed: June 7, 2024)
_____

OPINION[*]
_____

Matthew M. Robinson [ARGUED]
Robinson & Brandt
629 Main Street, Suite B
Covington, KY 41011

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Counsel for Appellant John Alexis Jackson

Adam Sleeper [ARGUED]
Natasha Baker
Delia L. Smith
Office of United States Attorney
5500 Veterans Drive, Suite 260
St. Thomas, Virgin Islands 00802-6424

Counsel for Appellee United States of America

SHWARTZ, Circuit Judge.

John Alexis Jackson appeals his convictions for various child sex-related crimes. For the following reasons, we will affirm.

I

Jackson, an adult residing in St. Thomas, had a sexual relationship with three minors over the course of two years. On approximately eight or more occasions, he met sixteen-year-old Jane Doe 3 at her high school and drove her to his apartment, where they had sex. Jackson once asked Jane Doe 3 to have a threesome with him and one of her classmates, and Jane Doe 3 contacted fourteen-year-old Jane Doe 2. Jackson later drove them both to his apartment, where they had sex. After that encounter, Jackson continued relations with Jane Doe 2, driving her to a parking lot approximately twice per week to have sex over the course of several months.

Jane Doe 2 later introduced Jackson to fourteen-year-old Jane Doe 1, with whom Jackson had sex approximately seven times, beginning on her fifteenth birthday. In addition, for his thirtieth birthday, she acceded to Jackson's request for oral sex.

2

Another time, Jackson drove Jane Doe 1 to his apartment in a red Acura and used her cellphone to film them having sex in his bedroom without her knowledge. Afterwards, they watched the video together. Jane Doe 1 told him that she did not want the video on her phone, and he said that he would delete it after sending a copy of it to himself. Less than a month later, Jane Doe 1 told law enforcement about Jackson's activities, including that Jackson used her phone to videotape one of their sexual encounters.[1] Law enforcement found the sex video on Jane Doe's phone, stored in a "recently deleted folder[.]" App. 626. Jane Doe 1 identified herself and Jackson's hand in a screenshot of the video.

Law enforcement then obtained a warrant to search Jackson's residence and car. The warrant application included an affidavit from Homeland Security Investigations ("HSI") Special Agent Alicia Blyden, which, in addition to attesting to the details regarding the videotaped incident, stated that (1) Jane Doe 1 directed Special Agent Blyden to the location of Jackson's apartment, confirmed that the sexual encounter occurred there, and provided a drawing and details about where the apartment was situated within the structure; (2) Special Agent Blyden later traveled to the house where she saw a red Acura parked in front of the residence, matching the car Jane Doe 1 described during the interview; (3) most child pornography collectors retain their pornography indefinitely and safeguard it from discovery, damage, or theft; (4) such persons often maintain hardcopy or digital writings on the subject of sex with children;

---

[1] Jackson admitted to law enforcement that he had sex with Jane Doe 1 on her fifteenth birthday, on his thirtieth birthday, and on another occasion.

and (5) to perform a complete search for relevant materials contained on a phone or computer, agents typically must seize all electronic storage systems, and any input and output peripheral devices.[2] The warrant's cover sheet permitted officials to search Jackson's residence and vehicle for evidence of violations of 18 U.S.C. §§ 2251(a) (sexual exploitation of children), 2252A (certain activities relating to material constituting or containing child pornography), and 2252(a) (certain activities relating to material involving the sexual exploitation of minors). The application and warrant submitted to the Magistrate Judge also contained Attachment A, which described the places to be searched, i.e., Jackson's apartment and Acura, and Attachment B, which listed the items to be seized.[3]

Before executing the warrant, Special Agent Blyden met with the search team and provided an overview of the case and the search's scope. Special Agent Blyden led the search and decided which items to seize, which included: (1) a leafy substance and brownies that tested positive for marijuana, along with other drug paraphernalia; (2) a tiger-print pillow and gold bracelet that appeared in the sex video; and (3) cellphones and iPads. Special Agent Blyden had the warrant's cover page, affidavit, and Attachments on hand during the search, but left Jackson and his counsel (who came to the house during the search) with copies of only the warrant's cover page and an inventory of the items seized, which she said was her practice.

---

[2] The affidavit did not discuss any of Jackson's sexual encounters with Jane Does 2 or 3.

[3] This list included images of child pornography, cellphones, computers, hard drives, flash memory devices, records of occupancy of the premises, and diaries.

4

A grand jury returned an indictment charging Jackson with, among other things, production of child pornography, in violation of 18 U.S.C. § 2251(a) ("Count One"), and three counts of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423(a) ("Counts Two, Three, and Four").  Jackson moved to suppress the evidence seized from his home.  The District Court denied the motion to suppress, except as to the brownies.  See United States v. Jackson, No. 3:19-cr-0015, 2021 WL 27458, at *15 (D.V.I. Jan. 4, 2021).  It held that the warrant was supported by a substantial basis for concluding that probable cause existed and explained that, although Special Agent Blyden's failure to provide Jackson the Attachments rendered the warrant insufficiently particularized, suppression was not warranted as her omission did not undermine the purposes of the particularity requirement.[4]  Id. at *6, 10-11.  The Court also held the pillow, bracelet, marijuana, and drug paraphernalia were validly seized under the plain view doctrine.  Id. at *12-13.

At trial, the Jane Does testified as to the above-noted facts concerning their relationships with Jackson, an agent testified that the sex video's data revealed that it was taken in the vicinity of Jackson's home and another officer testified about the statements Jackson made to law enforcement.  In addition, the jury saw the sex video, pillow, gold bracelet, and Jackson's text messages with Jane Doe 1.  The jury convicted Jackson on all counts, and the District Court sentenced him to 300 months' imprisonment.  He appeals,

---

[4] The Government also informed the Court that it subsequently reminded the Virgin Islands' HSI agents to leave warrants and attachments at the premises they search.

5

challenging the order denying his suppression motion and the sufficiency of the evidence supporting his convictions on Counts One through Four. We address each in turn.

## II[5]

## A[6]

The Constitution prohibits "unreasonable searches and seizures" except "upon probable cause[.]" U.S. Const. amend. IV. There is probable cause for a search when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983) (internal quotation marks omitted)). "A court is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense." Id. at 305-06 (internal quotation marks and citation omitted).

Here, the affidavit stated that (1) Jackson transported Jane Doe 1 to his apartment where he filmed them having sex and then said he was going to send the video to himself; (2) most child pornography collectors retain it indefinitely and safeguard it from discovery and damage; (3) such persons often maintain writings on the subject; and (4) to

---

[5] The District Court had jurisdiction under 48 U.S.C. § 1612(a) & (c) and 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

[6] We review the District Court's order denying a "motion to suppress for clear error "as to the underlying factual findings and exercise[] plenary review of [its] application of the law to those facts." United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002). Like a district court, we do not "rubber stamp" a magistrate judge's finding of probable cause, United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983), but we look for a substantial basis for that conclusion and give it "great deference," Illinois v. Gates, 462 U.S. 213, 236 (1983).

perform a complete search for illicit materials contained on computers or cellphones, agents typically must seize all electronic storage and input devices. Based on these attestations, to which the magistrate judge could "give considerable weight[,]" United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000), there was a substantial basis for the Magistrate Judge's conclusion that there was probable cause to believe that evidence of child pornography would be found in Jackson's home, particularly given that Jackson took the video there and wanted to ensure that it was sent to him, presumably for him to retain, before she deleted it.[7]

B

Warrants must "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. The warrant presented to the Magistrate Judge described with particularity the place to be searched in Attachment A and the items to be seized in Attachment B. Those attachments, however, were not provided to Jackson. While the failure to do so was an error, suppression is not warranted.

---

[7] Although Jackson did not explain why the warrant to search his car lacked probable cause, and this failing could be viewed as a forfeiture, see United States v. James, 955 F.3d 336, 345 n.8 (3d Cir. 2020), we do not need to reach this issue because there is no indication in the record that anything seized from the car was entered in evidence, so the question of suppression is moot.

Additionally, to the extent that Jackson now raises a staleness argument, we decline to consider it, as he did not raise it before the District Court. See United States v. Rose, 538 F.3d 175, 182-84 (3d Cir. 2008) (observing that a suppression argument raised for the first time on appeal is forfeited, and we do not consider it even under Rule 52(b)'s plain-error standard).

As to Jackson's argument that the warrant was defective because Special Agent Blyden did not confer with a federal prosecutor before applying for it, Jackson has provided no authority that such consultation is required.

The purpose of suppression, or exclusion, "is to deter future Fourth Amendment violations." Davis v. United States, 564 U.S. 229, 236-37 (2011) (citations omitted); Herring v. United States, 555 U.S. 135, 144 (2009) (explaining that the exclusionary rule seeks "to deter [law enforcement's] deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence"). To obtain suppression, however, there must be "but-for causality" between the violation and the seizure of the evidence. Hudson v. Michigan, 547 U.S. 586, 592 (2006). Thus, the exclusionary rule does not, for example, categorically apply when a warrant fails to particularize the things to be seized, see, e.g., United States v. Franz, 772 F.3d 134, 144-45 (3d Cir. 2014). Rather, in such instances we consider "(1) the extent to which the violation in th[e] case undermined the purposes of the Fourth Amendment and (2) what the Government gained from the violation." United States v. Wright, 777 F.3d 635, 640 (3d Cir. 2015). We consider these factors because the Fourth Amendment's particularity requirement furthers two core purposes: to (1) "provide[] written assurance that the [m]agistrate [judge] actually found probable cause to search for, and to seize, every item mentioned[,]" and (2) "prevent[] general searches by confining the discretion of officers and authorizing them to seize only particular items." Id. (internal quotation marks and citations omitted).[8]

---

[8] The particularity requirement also functions to "inform[] the subject of the search 'of the lawful authority of the executing officer, his need to search, and the limits of his power to search[.]'" United States v. Tracey, 597 F.3d 140, 146 (3d Cir. 2010) (quoting Groh v. Ramirez, 540 U.S. 551, 561 (2004)). Actions inconsistent with this third purpose do not, however, necessarily require suppression, see, e.g., United States v. Wright, 777 F.3d 635, 641 (3d Cir. 2015), because "'neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41' requires 'the executing officer [to] present the property owner with a copy of the warrant before conducting his search[,]'" id. (first alteration in the

8

Here, the failure to provide Jackson with Attachments A and B at the time of the search did not undermine either goal. First, the Magistrate Judge approved a warrant that incorporated Attachments A and B. See Bartholomew v. Com. of Pa., 221 F.3d 425, 428-29 (3d Cir. 2000). We are therefore "confident that the [M]agistrate [J]udge found probable cause to search" the premises described in Attachment A "and seize every item listed" in Attachment B. Wright, 777 F.3d at 640-41. Second, the search was not general, as Special Agent Blyden explained the purpose and scope of the search to the other agents and ensured that all items seized either fell within the scope of the warrant or were subject to seizure under the plain view doctrine, as we will discuss in the next section. See id. at 640; Franz, 772 F.3d at 147. Most significantly, Special Agent Blyden's failure to provide Jackson with the itemized list was not the but-for cause of the evidence being seized, as the agents would have seized the same items even if Jackson was presented with the Attachments. Accordingly, the Fourth Amendment violation was not the but-for cause of the seizure of the items. See Hudson, 547 U.S. at 592. Finally, addressing Special Agent Blyden's omission via suppression "is not worth the social cost of excluded evidence[,]" Wright, 777 F.3d at 641-42, particularly because, while the

original) (quoting United States v. Grubbs, 547 U.S. 90, 98-99 (2006)). Furthermore, "[t]he Fourth Amendment 'protects property owners not by giving them license to engage the police in a debate over the basis for the warrant, but by interposing, [before the search], the "deliberate, impartial judgment of a judicial officer . . . between the citizen and the police," and by providing, [after the search], a right to suppress evidence improperly obtained and a cause of action for damages.'" Id. (second and third alterations in the original) (quoting Grubbs, 547 U.S. at 99 (quoting Wong Sun v. United States, 371 U.S. 471, 481-82 (1963))).

9

District Court said it had seen this same type of omission in another case, see Jackson, 2021 WL 27458, at *10, (1) there is no evidence that anyone at HSI besides Special Agent Blyden failed to leave the attachments together with the warrant at the premises searched,[9] and (2) the Government subsequently reminded the Virgin Islands' HSI agents of their obligation to do so.

Like the District Court, we are also troubled by these two episodes. As the chief federal law enforcement officer, the United States Attorney must ensure that federal law enforcement agents know and fulfill their constitutional obligations. After a search concludes, agents must leave behind a copy of the warrant and any attachments that describe the place to be searched and items to be seized, unless the issuing judge has granted the rare request to seal the entire search warrant itself.

For all of these reasons, suppression of the seized items is not warranted.

C

The plain view exception to the Fourth Amendment's warrant requirement permitted agents to seize the pillow, bracelet, marijuana, and drug paraphernalia. To seize an item under plain view (1) "the officer [must] not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed[,]" (2) the object's "incriminating character must also be immediately apparent[,]" and (3) the

---

[9] For all of these reasons, neither Special Agent Blyden's many years of experience nor her personal practice tip the scale in favor of suppression. See Wright, 777 F.3d at 639 (describing the negligent agent as "extensive[ly] experience[d]"); see also Herring v. United States, 555 U.S. 135, 144 (2009) (observing that in some circumstances, suppression is warranted to deter "recurring or systemic negligence").

officer "must also have a lawful right of access to the object itself." Horton v. California, 496 U.S. 128, 136-37 (1990) (internal quotation marks and citations omitted).

Here, the first factor is satisfied as the warrant (the service of which became invalid only after when Special Agent Blyden failed to leave behind a copy of the attachments) permitted the agents to enter the residence, at which time they observed the contested items. Second, the objects bore an immediately apparent incriminating character. Both the tiger-print pillow and gold bracelet looked identical to items depicted in the sex video, which Special Agents had viewed before conducting the search. Additionally, the marijuana and accompanying drug paraphernalia was facially incriminating. Third, the officers could lawfully access the items in all places in the home, given what the warrant itself listed items that could be found anywhere in the house. Thus, the plain view exception permitted the seizures.

D[10]

1

Sufficient evidence permitted the jury to convict Jackson on Count One[11] for violating 18 U.S.C. § 2251(a), which punishes "[a]ny person who (1) employs, uses,

---

[10] "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis omitted). Our review is "highly deferential[.]" United States v. Caraballo-Rodriguez, 726 F.3d 418, 430 (3d Cir. 2013) (en banc).

[11] We review Jackson's unpreserved sufficiency challenges to Count One for plain error, which exists where "the record [is] devoid of evidence of guilt or the evidence [is] so tenuous that a conviction is shocking." United States v. Jabateh, 974 F.3d 281, 300 (3d Cir. 2020) (internal quotation marks and citation omitted).

11

persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct (2) for the purposes of producing any visual depiction of such conduct[.]"  18 U.S.C. § 2251(a) (numbers added).  The second element "requires only that the defendant specifically intend to take a picture of the conduct that he orchestrated[.]"  United States v. Heinrich, 57 F.4th 154, 161 (3d Cir. 2023); see also United States v. Palomino-Coronado, 805 F.3d 127, 131 (4th Cir. 2015);[12] (observing that "courts do not require that a defendant be single-minded in his purpose to support a conviction"); United States v. Gatlin, 90 F.4th 1050, 1056, 1061-62 (11th Cir. 2014) (affirming a § 2251(a) conviction where the defendant had sex at least partly to record the event, as shown by the way he held the camera while having sex and that he and the victim posed during taping).  A court may consider indirect evidence, including "a defendant's conduct before, during, or after the charged criminal acts[.]"  United States v. Torres, 894 F.3d 305, 311 (D.C. Cir. 2018).

Here, the evidence adduced at trial showed that Jackson, without Jane Doe 1's knowledge, videotaped himself having sex with her and then showed her the video.  The angle of the camera, which focused on their genitals, and the fact that Jackson watched it with Jane Doe 1 afterwards show that he had a particular purpose in recording their

---

[12] Jackson's reliance on Palomino-Coronado is misplaced.  805 F.3d 131 (4th Cir. 2015).  This out-of-circuit precedent is factually distinguishable for at least two reasons.  First, the media at issue there was a single sexually explicit photo, id. at 129, 132, where here, the media was a video, and the camera position strongly suggests an intent to create child pornography.  Second, the Palomino-Coronado court did not apply plain error review as we do here.  See id. at 130.

sexual activities. Based upon the foregoing, a jury had reason to infer that Jackson had sex partly to record it.

2

Sufficient evidence also permitted the jury to convict Jackson on Counts Two, Three, and Four for transporting Jane Does 1, 2, and 3 with intent to engage in criminal sexual activity with each of them in violation of 18 U.S.C. § 2423(a). See 18 U.S.C. § 2423(a) (criminalizing "transport[ing] an individual who has not attained the age of 18 years in . . . [a] territory . . . of the United States, with intent that the individual engage in . . . any sexual activity for which any person can be charged with a criminal offense"). The criminal sexual activity must not be "merely incidental to the trip[,]" but it need not be "the dominant—rather than a significant or motivating—purpose[.]" United States v. Hayward, 359 F.3d 631, 637 (3d Cir. 2004) (emphasis, internal quotation marks, and citation omitted).

Here, Jane Doe 3 testified that (1) on multiple occasions, Jackson would pick her up from school, drive her to his apartment, and have sex with her; and (2) one time, he drove her and Jane Doe 2 to his apartment, where he had sex with them. Jane Doe 2 testified that Jackson routinely drove her to a parking lot where they had sex. Lastly, Jane Doe 1 testified that Jackson often drove her to his apartment where they had sex, including on her fifteenth birthday, his thirtieth birthday, and the day he recorded the video. An agent also testified that Jackson admitted to having transported Jane Doe 1 to his apartment and having sex with her there.

13

Based on the foregoing, the jury had sufficient evidence to find that Jackson transported Jane Does 1, 2, and 3 so that he could have sex with them.

## III

For the foregoing reasons, we will affirm.