NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3095
_____

UNITED STATES OF AMERICA

v.

RODERICK KING,
                    Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 2-21-cr-00184-001
District Judge:  Honorable Christy Criswell Wiegand

_____

Submitted under Third Circuit L.A.R. 34.1(a)
April 17, 2024

Before: HARDIMAN, SMITH, and FISHER, *Circuit Judges*

(Filed: August 21, 2024)

_____

OPINION*
_____

SMITH, *Circuit Judge*.

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

A jury found Roderick King guilty of one count of sex trafficking a child in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and 1594(a), and two counts of producing material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a). The District Court sentenced King to 444 months on the sex trafficking charge and 360 months on the production charges, to be served concurrently. King appealed. We will affirm.

## I. Facts and Procedural History

After a grand jury indicted King in April 2021 on the above-referenced criminal offenses, a federal public defender entered his appearance on King's behalf. Despite being represented by counsel, King filed a pro se motion to dismiss. The District Court denied the motion, without prejudice to the filing of a counseled motion. Shortly thereafter, his federal public defender filed two motions. First, counsel sought to postpone trial and other pretrial deadlines. Second, counsel moved to withdraw as King's attorney. The District Court scheduled a hearing on the motion to withdraw, which recited a breakdown in the attorney-client relationship. In light of the pendency of the motion to withdraw, the Court granted a postponement of trial until January 18, 2022. The Court further determined that the time between its order continuing trial and the new trial date was excludable under the Speedy Trial Act, *see* 18 U.S.C. § 3161(h)(7)(A), because it avoided a miscarriage of justice and gave the defense reasonable time to effectively prepare the case.

After the hearing on the motion to withdraw, the District Court granted counsel leave to withdraw and appointed new counsel. King's new counsel sought leave to

reinstate the right to file pretrial motions, which the Court granted. The original trial date of January 18, 2022, became the deadline for filing those motions. When January 18, 2022, arrived, the District Court, granted another counseled motion for a continuance, finding an ends-of-justice continuance was needed until February 17, 2022. Trial was set for March 21, 2022. Then, on February 18, 2022, the Government moved for a brief extension of time, which the Court granted. Six days later, the Government filed several trial submissions, including a motion in limine. Within days, at defense counsel's request, a two-day extension was granted.

During a pretrial conference on March 15, 2022, King objected to certain stipulations to which his counsel had agreed. King also requested that his counsel withdraw, and sought to proceed pro se. After conducting a *Peppers* colloquy to ensure that King's waiver of counsel was knowing and voluntary, the Court granted the request to proceed pro se. *See United States v. Peppers*, 302 F.3d 120, 131 (3d Cir. 2002). The judge also appointed stand-by counsel and rescheduled trial for July 5, 2022.

During that same conference, King reiterated his disagreement with his former counsel's decision to enter into certain stipulations with the prosecution. Without these stipulations, the Government then was required to produce witnesses who could testify to the authenticity of certain social media accounts. King agreed to waive, under the Speedy Trial Act, the time between the March 15 conference and the new date for trial. In an order entered on March 15, the Court declared that the time between March 15 and the rescheduled trial, which was not to commence until July 5, was excludable under the Speedy Trial Act because a failure to grant the extension, given King's new pro se status

3

and his request to withdraw certain stipulations, would likely result in a miscarriage of justice and would deny King the reasonable time required for trial preparation. 18 U.S.C. § 3161(h)(7)(B)(i), (iv).

Once again, before the commencement of trial, King filed several pro se motions. This time, he moved to dismiss the indictment for violations of the Speedy Trial Act and the Interstate Agreement on Detainers Act (IADA). The District Court denied that motion and ruled on numerous other motions, allowing trial to commence on July 5, 2022.

At trial, the Government offered the testimony of not only law enforcement officers, but also the minor victim herself, who by that time had reached the age of majority. King did not present any evidence or defense witnesses. The jury found King guilty on all counts. The District Court conducted a sentencing hearing on December 16, 2022, and imposed a sentence of imprisonment of 444 months on the sex trafficking count and 360 months imprisonment on each of the two counts of producing material depicting the sexual exploitation of a minor. Each sentence ran concurrently with the other counts of conviction. The Court also ordered King to serve a life term of supervised release and directed him to pay certain fines.

Even before sentence was imposed, King filed a pro se notice of appeal. After reviewing King's appellate brief, the Government moved to vacate judgment and remand for a new trial. The Government explained that it had discovered, in reading King's pro se brief, that when King's first counsel sought to withdraw in October 2021, King had asked during an ex parte hearing that he be permitted to represent himself. According to

4

King, the District Court had failed to conduct a *Peppers* colloquy[1] during that ex parte proceeding.

This Court granted the Government's motion in part, ordered a limited remand, and stayed the appeal. We instructed the District Court to confirm whether King desired to continue to represent himself, and if so, to allow him "to accept or reject filings docketed between October 19, 2021," the date when his second counsel was appointed, and March 15, 2022, the date on which he was granted leave to represent himself. Third Circuit Dkt. No. 36. We directed the District Court, to the extent King would have handled any filing differently, to resolve whether this "would have so altered the legal or factual matters at trial as to be a basis for a new trial." *Id.* (internal quotation marks and citation omitted). And we further directed the District Court to "recalculate the Speedy Trial Act deadline to determine whether King's trial would have been timely had King originally made those decisions." *Id.* If the trial were determined to have been untimely, the District Court was directed to explain the remedy it would order.

In compliance with our order, the District Court provided King with the complete District Court docket and copies of all filings between October 19, 2021, and March 15, 2022. King objected to his counsel's status report and a few pretrial motions, as well as several pretrial motions and submissions filed by the Government. Mindful of our instruction, the District Court considered King's objections and concluded that "any error attributable to the delayed *Peppers* colloquy" in response to the initial request to proceed

---

[1] *See Peppers*, 302 F.3d at 131.

pro se had been "corrected in advance" of the July 5, 2022, trial. Cm/ecf no. 338, at 12.[2]

The District Court explained that King's right to self-representation had been "restored" as of March 15, 2022, and that he had "received 'a fair chance to present his case in his own way.'" *Id.* (quoting *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984)). In addition, the District Court recalculated the time that had elapsed on the speedy trial clock. It concluded that commencement of King's trial on July 5, 2022, was timely and consistent with the Speedy Trial Act.

Before the District Court issued its ruling following remand, which concluded that King's right to self-representation had not been violated, King filed in this Court an amended informal brief, raising nineteen issues. Pursuant to a motion from the government, we lifted the stay and the parties completed appellate briefing.[3]

---

[2] Citations to "Cm/ecf no." refer to the District Court docket entries, *United States v. King*, 2:21-cr-184, W.D. Pa.

[3] The District Court exercised jurisdiction under 18 U.S.C. § 3231. Because King's notice of appeal was filed before he was sentenced, it was premature. Although our caselaw "permits the ripening of a premature appeal from a decision that is not yet appealable, it does so only to permit review of that decision once it becomes appealable. It does not permit review of subsequent rulings that were not (and could not have been) designated in the notice of appeal." *Marshall v. Comm'r Pa. Dep't of Corr.*, 840 F.3d 92, 98 (3d Cir. 2016) (per curiam). Yet *United States v. Hashagen*, 816 F.2d 899, 901 (3d Cir. 1987) (in banc), held in the context of a direct appeal that "[a] notice of appeal filed after verdict but before sentence, although premature, ripens into an appealable order when the judgment of sentence is entered." And Federal Rule of Appellate Procedure 4(b)(2) provides that "[a] notice of appeal filed after the court announces a decision, sentence or order—but before the entry of judgment or order—is treated as filed on the date of and after the entry." While neither *Hashagen* nor Rule 4(b) directly address whether a premature notice of appeal permits review of a sentence that is subsequently imposed, we believe that a plausible reading of *Hashagen* and Rule 4(b) permits us to exercise jurisdiction here given the complicated procedural history this case presents, including this Court's order following the premature notice of appeal in which we retained jurisdiction and ordered a limited remand.

## II. The Sixth Amendment Right to Self-Representation

King asserts that the District Court violated his right to self-representation guaranteed by the Sixth Amendment.[4] In *Faretta v. California*, the Supreme Court declared that the Sixth Amendment "implies a right of self-representation." 422 U.S. 806, 821 (1975). "In determining whether a defendant's *Faretta* rights have been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *McKaskle*, 465 U.S. at 177.

Here, King contends that his constitutional right to self-representation was violated because of the District Court's failure to accept his initial request to represent himself during the October 19, 2021, ex parte conference concerning defense counsel's motion to withdraw. King does not take issue with the District Court's ruling on limited remand that any error attributable to the failure to conduct a *Peppers* colloquy in October 2021 had been corrected in March 2022 when he took over the defense reins.[5]

Our review of the record as a whole reveals that after the District Court allowed King to proceed pro se and advised that the case would "begin anew" for him, he

---

[4] If a defendant's right to self-representation has been denied, it is structural error and "not subject to harmless-error review." *McCoy v. Louisiana*, 584 U.S. 414, 427 (2018). We exercise plenary review in deciding if a district court violated a defendant's right of self-representation. *Peppers*, 302 F.3d at 127.

[5] We recognize that in his reply brief, King complains about the District Court's opinion issued pursuant to the limited remand. His argument, however, does not challenge the propriety of the District Court's ruling that the "reset [of] the game clock" corrected any error. Reply Br. 4. Rather, he contends that despite that "reset," there was still a violation of the Speedy Trial Act.

7

vigorously represented himself. SA946.[6] He filed numerous pro se motions and opposed the Government's pleadings. And he was personally involved in every facet of trial. *See* Cm/ecf no. 338, at 12 n.1. Because *McKaskle* instructs that our "primary focus" is on whether King had a "fair chance to present his case in his own way," 465 U.S. at 177, we conclude that the District Court's delay in allowing King to proceed pro se did not deprive him of his Sixth Amendment right to self-representation given the circumstances. *See United States v. Rice*, 776 F.3d 1021, 1025-26 (9th Cir. 2015) (concluding that the delay in addressing the defendant's self-representation request did not offend the Sixth Amendment because the trial court "reset the game clock" and he "received precisely what the Sixth Amendment guarantees"); *United States v. Lee*, 760 F.3d 692, 695 (7th Cir. 2014) (concluding that a "re-do" of the suppression hearing would correct the deprivation of the procedural error that resulted when defendant was unable to represent himself at the suppression hearing).

### III. Speedy Trial Claims

We turn next to King's speedy trial claims. He asserts a claim under both the Sixth Amendment and the Speedy Trial Act. We discern no violation under either.

### A. Speedy Trial Act[7]

---

[6] Citations to the "SA" refer to the Supplemental Appendix filed by the Government.

[7] We conduct "plenary review over the district court's construction and interpretation of the Speedy Trial Act and its provisions regarding excludable time. The findings of fact to which the district court applies the Speedy Trial Act are reviewed under a clearly erroneous standard." *United States v. Hamilton*, 46 F.3d 271, 273 (3d Cir. 1995) (citations omitted).

King contends that his rights under the Speedy Trial Act were violated. He does not directly take issue with the District Court's calculation following limited remand that only 58 days of the 70-day speedy trial clock had run. Instead, he contends that the District Court's findings fail to support the "ends of justice" continuances, which were granted under 18 U.S.C. § 3161(h)(7)(A). We are not persuaded. The District Court docket entries granting the continuances set forth the factual bases warranting the extension of time needed by defense counsel—and ultimately by King proceeding pro se—to effectively prepare for trial. *See United States v. Adams*, 36 F.4th 137, 146 (3d Cir. 2022). We conclude that these docket entries demonstrate that the District Court appropriately "balanced the relevant interests." *Id.*

In his reply brief, King contends that he was coerced into waiving his rights under the Speedy Trial Act during the March 15, 2022, pretrial conference. Notwithstanding this unsupported assertion, it is clear from the docket that the District Court properly weighed the relevant interests in light of King's decision to proceed pro se, which resulted in the scuttling of certain trial stipulations. In our view, the District Court appropriately extended the trial date to allow for effective trial preparation. *See United States v. Brooks*, 697 F.2d 517, 520 (3d Cir. 1982) (acknowledging that trial courts are permitted to grant an ends-of-justice continuance sua sponte). Accordingly, we reject King's claim that his rights under the Speedy Trial Act were violated.

### B. Sixth Amendment Claim[8]

---

[8] We exercise de novo review of a district court's legal determination of whether a defendant was deprived of his Sixth Amendment right to a speedy trial and review any

*Barker v. Wingo* instructs that a Sixth Amendment speedy trial claim requires applying a "balancing test" that weighs the conduct of both parties, considering particularly the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. 514, 530 (1972). Although the nearly fourteen-month delay between the April 27, 2021, indictment and the July 5, 2022, trial is long enough to trigger inquiry by applying the *Barker* factors, *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993), we note that approximately seven months of the delay originated with a request from King's initial defense counsel for additional time beginning on June 10, 2021. As we declared in *Wells v. Petsock*, such delay should "not be considered for purposes of determining whether the defendant's right to a speedy trial has been infringed." 941 F.2d 253, 258 (3d Cir. 1991). Nor should we consider the four-month delay occasioned by the continuance granted after the District Court found King competent to represent himself on March 15, 2022. At that time, King withdrew his counsel's agreement to certain trial stipulations and agreed to a continuance to permit the Government to obtain the necessary witnesses and to prepare for trial. Moreover, during this latter delay between March and the commencement of trial in July, King filed numerous pro se motions, necessitating responses and judicial resolution. Given that these delays were granted to accommodate the defendant's need to prepare for trial, the overall time between indictment and trial does not weigh in favor of King's claim.

---

underlying factual findings for clear error. *United States v. Battis*, 589 F.3d 673, 677 (3d Cir. 2009). The Government correctly points out that King raised his constitutional speedy trial claim for the first time on appeal, so we review for plain error. *United States v. Shaw*, 891 F.3d 441, 454 (3d Cir. 2018).

The second factor requires us to examine the reasons for the delay. The initial delay was to ensure that defense counsel could effectively prepare for trial. The reasons for the final delay before trial were twofold: (1) to ensure that King, then proceeding pro se, had the opportunity "to present his case in his own way," *McKaskle*, 465 U.S. at 177; and (2) to allow the Government to respond to the withdrawal of the stipulations and to obtain the necessary witnesses to authenticate certain documents. In short, the delay was not a deliberate effort to "hamper the defense." *Barker*, 407 U.S. at 531. These reasons do not weigh in King's favor under *Barker*'s balancing test.

Inasmuch as King did not raise a claim in the District Court that his constitutional right to a speedy trial had been violated, *Barker*'s third factor does not help him either. *Barker*'s "fourth factor is prejudice to the defendant." 407 U.S. at 532. King submits that he was prejudiced because the delay hindered his defense. He submits that the prejudice he sustained "mainly stems from the government's dilatory conduct, bad faith[] continuances, and intentional delay in bringing [him] to trial." Appellant's Inf. Am. Br. 27. His argument is far from compelling. In fact, the District Court's reset of the game clock enabled King to seek further discovery and to file motions that his former counsel had not pursued. Because King had "a fair chance to present his case in his own way," *McKaskle*, 465 U.S. at 177, we reject King's assertion that he was prejudiced. In sum, we conclude that King's Sixth Amendment right to a speedy trial was not infringed.

11

## IV. Interstate Agreement on Detainers Act Claim[9]

The Interstate Agreement on Detainers Act (IADA) was "designed 'to encourage the expeditious and orderly disposition of . . . charges [outstanding against a prisoner] and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.'" *United States v. Mauro*, 436 U.S. 340, 343 (1978) (quoting IADA, Art. I). To that end, it contains (as does the Speedy Trial Act) time limitations in which the prisoner must be brought to trial. IADA, Arts. III(a), IV.

The Act "applies only to individuals serving a term of imprisonment." *United States v. Fulford*, 825 F.2d 3, 11 (3d Cir. 1987). Here, King was initially housed in the Clarion County Jail pursuant to state charges. Department of Homeland Security Agent Fina Spory provided the jail with a copy of the federal arrest warrant for King. That warrant served as a detainer because it "put the officials of the institution in which [King was] incarcerated on notice" that he was wanted in another jurisdiction. *Mauro*, 436 U.S. at 358. Thereafter, King was sentenced on state charges on June 9, 2021. The following day, pursuant to a federal writ of habeas corpus ad prosequendum, King was transferred to federal court for his initial appearance on the federal indictment. Because King was then serving a state sentence, Article IV of the IADA was triggered. *See Mauro*, 436 U.S. at 362. Under Article IV, trial on the outstanding charges "shall be commenced

---

[9] Because the interpretation and application of the IADA present legal issues, our review is plenary. *Cooney v. Fulcomer*, 886 F.2d 41, 43 (3d Cir. 1989). We review factual findings for clear error. *United States v. Dent*, 149 F.3d 180, 183 (3d Cir. 1998).

12

within one hundred and twenty[10] days of the arrival of the prisoner in the receiving State, but for good cause shown . . . the court . . . may grant any necessary or reasonable continuance."[11] IADA, Art. IV(c) (footnote added).

According to King, the 120-day IADA clock ran because the continuances were "insufficient." Appellant's Am. Inf. Br. 16. We have already concluded that the continuances were factually supported and necessary to allow for effective trial preparation under the Speedy Trial Act. *See supra* § III.A. We likewise conclude that the continuances granted by the District Court were "necessary" and "reasonable" as required by Article IV of the IADA. *See United States v. Peterson*, 945 F.3d 144, 154 (4th Cir. 2019) ("[E]very circuit court to reach the issue has agreed that periods excludable under the [Speedy Trial Act] for 'ends of justice' continuances should also toll the 120-day clock under the IADA's substantially similar 'good cause' continuance provision."). We therefore reject King's assertion that his rights under the IADA were violated.

---

[10] King refers to the 180-day IADA clock in his informal amended brief. The 180-day clock applies under Article III when the prisoner triggers the Act by delivering written notice of the place of his imprisonment and his request for a final disposition of the charges. Article III is thus not applicable here. Agent Spory's service upon the institution of the detainer was made before King had been sentenced on his Pennsylvania charges. *See Fulford*, 825 F.3d at 11.

[11] Under the IADA, the term "State" includes "the United States of America." IADA, Art. II(a); *Mauro*, 436 U.S. at 354 (concluding that the "United States is a party to the Agreement as both a sending and a receiving State").

**V. Claim of Outrageous Conduct in Violation of the Due Process Clause**

King asserts that the Government violated his due process rights by "commencing and engaging in an unlawful investigation and withholding . . . information." Appellant's Am. Inf. Br. 4. He contends there was no reason for Agent Spory to investigate him and that she was a sham witness. He further submits that the Government created a false theory to explain why it commenced the investigation. Various documents, he claims, were fraudulent, including the grand jury transcripts, search warrants, and arrest warrant. King acknowledges that these arguments were not raised prior to trial.

Rule 12(b)(3) requires this defense to be raised by pretrial motion "unless the evidence supporting the claim . . . is not known to the defendant prior to trial." *United States v. Pitt*, 193 F.3d 751, 760 (3d Cir. 1999), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017). The record establishes that although King questioned the authenticity of various documents and the credentials of government officials before trial, he did not assert a due process claim of outrageous conduct. Because he was aware of evidence allegedly relevant to his claim of outrageous conduct but did not raise the issue before trial, we cannot consider his "untimely" arguments unless King shows "good cause" for us to do so. Fed. R. Crim. P. 12(c)(3). King fails to do so.

**VI. Claims of Constructive Amendment & Variance[12]**

---

[12] Our review of a properly preserved claim of constructive amendment or variance is plenary. *United States v. Vosburgh*, 602 F.3d 512, 531 (3d Cir. 2010). Because King did not raise this in the District Court, we review for plain error. *Id.*; Fed. R. Crim. P. 52(b).

King asserts in his Issues Thirteen and Sixteen that the jury instructions constructively amended counts one, two, and three of the indictment. Issue Seventeen suggests that there was a "possible variance" with the production of child pornography counts. Appellant's Am. Inf. Br. 49.

"An indictment is constructively amended when evidence, arguments, or the district court's jury instructions effectively 'amend the indictment by broadening the possible bases for conviction from that which appeared in the indictment.'" *United States v. McKee*, 506 F.3d 225, 229 (3d Cir. 2007) (quoting *United States v. Lee*, 359 F.3d 194, 208 (3d Cir. 2004) (alteration omitted)). When the jury is instructed on a ground that is "not fully contained in the indictment," the error is plain as it violates the Grand Jury Clause of the Fifth Amendment. *United States v. Syme*, 276 F.3d 131, 151 (3d Cir. 2002). In deciding if a defendant's substantial rights were prejudiced in the plain error context, the government must overcome a "rebuttable presumption" of prejudice *Id.* at 154. "Unless the government can show with certainty that the jury did not convict" King based on the amendment, "we must find plain error and reverse." *McKee*, 506 F.3d at 231.

### A. Constructive Amendment Claim and Count One

King asserts three bases on which a constructive amendment occurred: (1) the indictment did not include the "reasonable opportunity to observe" language from § 1591(c) as the instruction did; (2) the "vague offense dates" of "July 2017 through November 2020" broadened the bases for finding him guilty; and (3) the instructions

15

inserted the word "attempted" in the first element of the sex trafficking charge. Appellant's Am. Inf. Br. 42.

The indictment charged King with both sex trafficking and attempted sex trafficking, as it cited 18 U.S.C. §§ 1591(a) and 1594. Accordingly, the inclusion of the word "attempted" did not constructively amend the indictment. *See United States v. Davis*, 711 F. Appx 254, 257 (6th Cir. 2017) (rejecting defendant's constructive amendment claim as the indictment specifically cited the statutory subsection despite not including the statutory text). Similarly, the indictment contained the date range of which King complains, and therefore does not constitute a constructive amendment.

The inclusion of the "reasonable opportunity to observe" instruction from § 1591(c), however, was neither included nor referenced in the indictment. Inclusion of that language was a constructive amendment as to count one and constituted plain error that was presumptively prejudicial under *Syme*. 276 F.3d at 152-55; *see also United States v. Lockhart*, 844 F.3d 501, 515 (5th Cir. 2016). The question before us, then, is whether the Government has effectively rebutted the presumption of prejudice. *Syme*, 276 F.3d at 154-55.

The indictment required the jury to decide if the victim was a minor. The evidence shows that King personally knew the victim was a minor. When the minor testified, she told the jury that when she first met King in 2017, she was fourteen years old. When she was asked whether King knew her age, she answered that he did "[b]ecause I told him." SA1210. After having sex on their initial encounter, King gave the victim money. He continued to pay her each time they had sex, and sent her money

16

on other occasions. The victim testified that on two occasions King used Western Union to send her money, but that she was unable to directly receive the funds because she was not yet eighteen years of age. King knew that she was under eighteen, the victim explained, because he arranged to send the Western Union communications to adults who were able to access the money and then turn it over to her.

Testimony from Chelsea Bauman confirmed King's use of Western Union to funnel money to the victim. Bauman described how King sent her money via Western Union that was intended for the victim. But Bauman refused to turn the funds over when she realized that she knew the victim personally because she had played together with Bauman's children. Bauman testified she could not "think of a reason for a grown man to be giving a child that kind of money." SA1289.

Added to this damning testimony from both the victim and from Bauman is the testimony of a police officer, who was investigating the possible use by the victim and another girl of a stolen credit card. The officer telephoned King and asked if the credit card had been stolen. King responded that "he knew the[] kids" and had given his permission as a way of "trying to help them out." SA1278. We conclude that the foregoing evidence, together with Agent Spory's testimony and the email communications, effectively rebutted any presumption that inclusion of the "reasonable opportunity to observe" language was prejudicial. In other words, the Government has shown "with certainty" that King knew the victim's age and that the jury did not convict King simply on the basis that he had a reasonable opportunity to observe she was underage. *McKee*, 506 F.3d at 232. And because the constructive amendment created by

17

including the "reasonable opportunity to observe" language in the instruction did not affect King's substantial rights, we decline to vacate King's conviction on count one.

### B. Constructive Amendment as to Counts Two and Three

King asserts in Issue 16 that there was also a constructive amendment of counts two and three, both of which charged him with the production of child pornography in violation of § 2251(a). He points out that the jury instructions included that he "attempted" to commit these offenses and that the instructions allowed the jury to find the interstate commerce element by including that the videos were "actually" transported in interstate commerce. Appellant's Am. Inf. Br. 48-49.

The jury instructions advised that the Government could prove the interstate commerce element by showing that the "visual depiction has actually been transported." SA1551. Although this language does not appear in the indictment, it can hardly constitute a constructive amendment because those words are part of the text of § 2251(a), the very statute King was charged with violating.

As to King's contention that there was a constructive amendment of the production counts by the inclusion in the jury instructions of the words "attempted" and "attempting," SA1550, we agree that this broadens the charges in the indictment. The error is obvious. *See Syme*, 276 F.3d at 152-55. We conclude, however, that the Government effectively rebutted the presumption of prejudice. The case was not presented on a theory of attempted production. The instructions for the production counts did not explain the term "attempt." And the minor victim's testimony established that the videos were actually made, not attempted, and that King sent those videos to the victim

18

via Snapchat. The evidence presented and the instructions given remove any risk that the jury convicted King of an offense with which he was not charged. Accordingly, we conclude that the constructive amendment on the production counts did not affect King's substantial rights so as to warrant relief.

### C. A Variance on Counts Two and Three

"A variance occurs 'where the charging terms of the indictment are not changed but when the evidence at the trial proves facts materially different from those alleged in the indictment.'" *Vosburgh*, 602 F.3d at 532 (quoting *United States v. Daraio*, 445 F.3d 253, 259 (3d Cir. 2006)). King alleges that there was a variance because the evidence did not show that the videos were on his cellphone but rather that they were on the victim's cellphone.

We reject King's claim that there was a variance. Counts two and three of the indictment did not allege that the videos were on King's phone. Rather, these counts alleged that King orchestrated the minor's engagement in sexually explicit conduct for the purpose of producing visual depictions. As a result, proof regarding the device on which the unlawfully produced videos were found did not create a variance from the facts alleged in the indictment.

### VII. Sufficiency Challenges[13]

---

[13] A Rule 29 motion for a judgment of acquittal based on the sufficiency of the evidence is subject to plenary review. *United States v. Starnes*, 583 F.3d 196, 206 (3d Cir. 2009). We "review[] the sufficiency of the evidence in the light most favorable to the government and must credit all available inferences in favor of the government." *United States v. Riddick*, 156 F.3d 505, 509 (3d Cir. 1998). We must sustain the verdict if a rational juror "could find the essential elements of the crime beyond a reasonable doubt."

19

A.  Count One – 18 U.S.C. § 1591(a), (b)(2), and 1594(a)

Section 1591(a) makes the sex trafficking of children a crime.  To obtain a conviction, the Government must prove beyond a reasonable doubt:

> (1) that the defendant knowingly recruited, enticed, harbored, transported, obtained or maintained [the victim]; (2) that the recruiting, enticing, harboring, transporting, providing, obtaining or maintaining of [the victim] was in or affecting interstate or foreign commerce, and (3) that the defendant committed such act knowing or in reckless disregard of the fact . . . that [the victim] was under the age of 18 years of age and would be caused to engage in a commercial sex act.

*United States v. Pringler*, 765 F.3d 445, 449 (5th Cir. 2014).  Subsection (b)(2) specifies the applicable punishment if the child victim was older than fourteen years of age but had not yet attained age eighteen.  And § 1594(a) directs that whoever "attempts to violate" § 1591 "shall be punishable in the same manner as a completed violation of that section."

King raises a sufficiency issue as to each element of § 1591(a).  And he contends that the Government failed to prove he attempted to sex traffic the minor victim.  We conclude that the evidence is sufficient to support the jury's sex trafficking verdict.

We highlight the testimony of David Coleman, a forensics special agent with the Department of Homeland Security.  He testified that the Snapchat and Facebook accounts between the victim and King's username were extracted from the victim's cellphone, thereby preserving the data that existed at the time of extraction.  He also confirmed that the communications over Snapchat and Facebook required a connection to the internet to

---

*Starnes*, 583 F.3d at 206.  Because King did not raise his specific sufficiency arguments regarding the § 2251(a) offenses in the District Court, we also review the sufficiency of counts two and three for plain error.  Fed. R. Crim. P. 52(b).

"receive and send messages." SA 1110. And he testified that the two videos that King made of the victim engaging in sexually explicit conduct, Exhibits 13 and 14, had been obtained from the victim's Snapchat communications on her cellphone, and that the latest date on which these videos could have been produced was April 27, 2019. The victim was, as of that date, only sixteen years old.

The testimony of the victim also provided evidence satisfying the elements of a § 1591 offense. The victim testified that she made contact with King via Facetime in July 2017, when she was fourteen years old, and that in subsequent Facebook messages, King "offered [her] money to hang out." SAppx1213. She also testified that she later met King at a location near her home and that she personally informed King at the time they first met that she was fourteen years old. They engaged in sexual relations in the back of King's semi-truck during that first encounter. King paid her "a few hundred" dollars after that, and continued to pay her money after she "would go with him" to his truck for sex. SA1214-15. Those sexual encounters occurred, she testified, "[l]ike ten" times over a three-year period. SA1214. The victim related how King provided her with other items of value during that time, including her cellphone and payment of her cellphone bills. She also testified that King made two videos of them engaged in sexually explicit conduct. She explained that she learned about the videos because King sent them to her cellphone via Snapchat. Although King's face could not be seen in the videos, the victim identified him as the person with whom she was sexually engaged.

21

King asserts that the evidence fails to prove that he enticed the victim.[14] Yet the victim's testimony, together with the admission of the communications between King and the victim on Snapchat, amply prove that King manipulated her by providing both financial remuneration and gifts such as her cellphone, clothes, and shoes. In doing so, he was able to maintain his sexual access to her. This was sufficient for the jury to find enticement.

### B. Counts Two and Three – 18 U.S.C. § 2251(a)

King also challenges the sufficiency of the evidence to support his convictions on counts two and three for violating 18 U.S.C. § 2251(a).[15] That statute, in relevant part, makes it unlawful for "[a]ny person [to] employ[], use[], persuade[], induce[], entice[], or coerce[] any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a); *United States v. Heinrich*, 57 F.4th 154, 159 (3d Cir. 2023). This requires the Government to prove both an actus reus and a mens rea. *Heinrich*, 57 F.4th at 159. In *Heinrich*, we declared that the mens rea the prosecution must prove is that "defendant must engineer the sexually explicit conduct 'for the purpose of producing any visual depiction of *such* conduct.'" *Id.* at 161 (quoting § 2251(a)). King contends that the Government failed to satisfy the "'for

---

[14] Although King's Rule 29 motion at trial took issue with whether the Government satisfied the interstate commerce element, he now concedes that this element was satisfied by Agent Coleman's testimony.

[15] King denies that he is the male who appears in the sexually explicit videos. The victim testified to the contrary. The jury permissibly credited the victim's testimony that King was the other participant in the videos.

22

the purpose' element" because the decision to record was "spontaneous" and "unplanned." Appellant's Am. Inf. Br. 50. He suggests he was "not directing a video." *Id.*

We are not persuaded. The videos show that the victim was not directly facing the camera in either instance. And the victim testified that she learned of the videos when King sent them to her by Snapchat. These circumstances support a reasonable inference by the jury that the videos were created surreptitiously so they could be preserved without the victim's knowledge.[16] *See United States v. Torres*, 894 F.3d 305, 312-13 (D.C. Cir. 2018). And Agent Spory noted that, in one video, King instructed the victim how to perform oral sex. This, too, supports an inference that King was producing the video. *Id.* at 311; *United States v. Fortier*, 956 F.3d 563, 567-68 (8th Cir. 2020) (noting that defendant's instruction on positioning during video could possibly suggest an attempt to obtain a "better camera angle"). While King asserts that the video was simply a "spontaneous" act, Exhibit 14's focus suggests a deliberate effort to create a visual depiction of a specific portion of the sexually explicit conduct in which King and the victim were engaged. Indeed, to make the two videos with his cellphone, it was necessary for King to keep the cellphone within his reach. He then had to open the cellphone, select the camera application for videorecording, and record the sexual acts. Rather than spontaneity, these details suggest that King arranged the circumstances of the sexual encounters so that he could memorialize them without the victim's knowledge.

---

[16] In fact, King admits that the victim did not know he "was going to" record the sexually explicit conduct. Appellant's Am. Inf. Br. at 51-52.

*See United States v. Gatlin*, 90 F.4th 1050, 1062 (11th Cir. 2024). We conclude that the evidence, viewed in the light most favorable to the Government, was sufficient for the jury to find that King engineered the sexually explicit conduct so that he could record the visual depictions.

And we reject King's contention that, because the dates of the videos are unknown, the Government failed to prove that he enticed the victim before the production of the videos. He relies on *United States v. Broxmeyer*, where the defendant's § 2251(a) conviction was set aside for a lack of proof that the photos that had been taken by the victim were the result of the defendant's persuasion, inducement, or enticement. 616 F.3d 120, 125 (2d Cir. 2010). *Broxmeyer* instructed that the timing is "critical" because "the statute punishes the cause when it brings about the effect." *Id.* There, the victim took the photographs and there was "no evidence [the defendant] induced her to take them." *Id.* at 126. Here, however, the evidence provided a basis for the jury to infer that King enticed the victim to engage in sexually explicit conduct before taking the videos.

In short, we conclude that there is sufficient evidence to support King's convictions under § 1591 and § 2251(a).

## VIII. Claim that the Government Misstated an Element of Count One

King asserts in Issue Fourteen that the Government misstated an element of count one, unfairly affecting his trial. Our review is for plain error. Fed. R. Crim. P. 52(b).

In King's view, both statements by the Government in its opening and by Agent Spory during her testimony misstated the law by suggesting that "a commercial sex act alone was sufficient to prove count one." Appellant's Am. Inf. Br. 43. There is simply

24

no merit to this claim.  The District Court's instructions properly addressed what constituted a "[c]ommercial sex act" as defined in § 1591(e)(3).

## IX.  Miscellaneous Claims

Two of the nineteen issues that King presented for review assert that the Government or the trial court violated Federal Rule of Criminal Procedure 16 and a pretrial order deadline.  Issue Six generally asserts a due process violation based on an alleged deprivation of a fair trial resulting from the Government's having procured three fictitious certificates of authenticity.  Five of the nineteen issues claim that certain procedural or evidentiary rules were violated by the admission of certain evidence into the record.  *See* Issues Eight, Nine, Ten, Eleven and Twelve.  We conclude that none of these issues have merit.

### A.  Alleged Violation of Rule 16

Issue Three asserts that the Government violated Federal Rule of Criminal Procedure 16 by failing to produce the Cellebrite Report regarding the extraction of data from the victim's cellphone.[17]  King acknowledges that he received a metadata report during discovery, but contends it was error for the Government not to provide the "forensic image" produced in the Cellebrite Report.  The Government explained that no Cellebrite extraction was ever conducted, and King produces nothing to refute that assertion.  The Government did provide King with the Magnet AXIOM extraction report

---

[17] According to the legal argument of the parties presented in court, Cellebrite is a program utilized in a forensic review to extract data from a cellphone.

25

that Agent Coleman discussed in his testimony. King's suggestion of a Rule 16 violation is frivolous.

### B. Due Process Claim Based on Fictitious Certificates of Authenticity

In Issue Six, King asserts a due process violation based on the Government's allegedly "procuring [three] fictitious certificate[s] of authenticity," which were attached as exhibits to a motion in limine and a supplement to that motion. Appellant's Am. Inf. Br. 28 (citing cm/ecf nos. 150, 162). "The Due Process Clause of the Fifth Amendment guarantees the right to a fair trial." *United States v. Welshans*, 892 F.3d 566, 574 (3d Cir. 2018). First, we must consider if there was misconduct on the part of the government. *Id.* If there was, we must then determine if that misconduct resulted in an unfair trial. *Id.* This claim was not raised in the District Court, so we review for plain error. Fed. R. Crim. P. 52(b).

King contends that the certificates presented to the District Court were fictitious because he had been provided, during discovery, with a blank certificate of authenticity from Snap Inc. After asking for a completed form, King submits that the Government produced three completed certificates, which he contends must have been created by the Government. Each of the certificates that King complains of specifically references a search warrant or a subpoena, and each is signed by personnel from Snap Inc. or Facebook. King offers nothing more than an initial blank certificate and the subsequent production of three completed certificates. His claim of government misconduct in the production of these certificates is, again, frivolous.

### C. Alleged Violation by Issuance of an Amended Pretrial Order

26

In Issue Seven, King contends that the District Court violated King's right to a fair trial when it issued an amended final pretrial order even though the deadline for certain pretrial submissions had expired. Whether an amended pretrial order is appropriate is a matter committed to the sound discretion of the trial court. *See United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986).

Here, the day after the pretrial deadline expired, the Government moved for a competency hearing and to stay pretrial deadlines. Given the nature of the pending motions, we conclude there was no abuse of discretion by the District Judge. The Judge acted judiciously in establishing new deadlines and in attempting to keep the trial on track.

### D. Alleged Violation of Federal Rule of Evidence 404(b)

Issue Eight in King's amended informal brief contends that Federal Rule of Evidence 404(b) was violated twice during trial. First, he contends the District Court erred in allowing Sergeant Robert Murphy of the Butler Township Police Department to testify about an incident at Walmart during which King admitted giving a credit card to the victim and another minor. The second claim of a 404(b) violation occurred during the testimony of King's friend, Chelsea Bauman, who lived in Butler. As noted above, King had asked her to funnel cash from a Western Union communication to the victim. According to King, the violation of Rule 404(b) occurred when Bauman testified that she refused and that King then told her that it was normal for adult men to be attracted to younger women. King also contends that testimony from both Sergeant Murphy and

27

Bauman to the effect that the victim's mother had an addiction was violative of Rule 404(b).

We review for plain error, and King fails once more to meet its requirements. Fed. R. Crim. P. 52(b). The testimony concerning the minor's mother is plainly not 404(b) matter. It is not evidence of the defendant's other acts. The testimony from Sergeant Murphy regarding the Walmart incident is intrinsic evidence relating to the § 1591(a) count; it pertains to whether King enticed the victim with financial remuneration. *See United States v. Green*, 617 F.3d 233, 248 (3d Cir. 2010). Even if Bauman's testimony concerning a statement by King about men being attracted to younger women was 404(b) evidence (and our hesitation in concluding that it was should, by itself, suggest that any error was not plain), it did not affect his substantial rights.

### E. Alleged Violation of Federal Rule of Criminal Procedure 41

King asserts in Issue Nine that the Government violated Rule 41 when it introduced evidence obtained from search warrants issued to Facebook and Snapchat for his communications. He asserts that the warrants had not been returned to the magistrate in violation of the procedure set out in Rule 41 and that the evidence should have been excluded. Suppression arguments, however, must be raised before trial. Fed. R. Crim P. 12(b)(3)(C). So we cannot consider these "untimely" arguments because King fails to show "good cause." Fed. R. Crim. P. 12(c)(3).

### F. Alleged Violations of Federal Rules of Evidence 702 and 1002-1006

Issues Ten and Eleven challenge the expert testimony of Agent Coleman, who worked in computer forensics with the Department of Homeland Security. Agent

Coleman testified about the Snapchat and Facebook applications, their dependence on the internet, his examination of the minor victim's cellphone and the extraction of the data that existed on the victim's phone when she surrendered it to law enforcement. King contends that Agent Coleman's testimony violated the best evidence rule in Rules 1002-1006 and also submits that the District Court improperly allowed the admission of flawed forensic testimony from Agent Coleman in violation of Rule 702. Again, we review these issues for plain error. Fed. R. Crim. P. 52(b).

Rule 702 requires consideration of the expert testimony's "qualification, reliability and fit." *Schneider ex rel. Est. of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). A review of Agent Coleman's testimony shows that it met each of these requirements.

And we disagree with King's assertion that Agent Coleman's testimony violated the best evidence rule. Indeed, this argument is nearly inscrutable. Coleman's testimony about the extraction of the Snapchat and Facebook accounts explained that the AXIOM program that was used "recreate[d] the data in a presentable" and "easy-to-read format." SA1114-15. He also explained how he identified the videos in the Snapchat folder and what he could discern from the data. Contrary to King's assertion, this testimony concerning how the extraction was conducted and what it produced did not relate to substantive contents of the "original" Snapchat and Facebook accounts. We can discern no error, let alone one that is plain.

G. Alleged Error in Authenticating Exhibits 13 & 14

In his Issue Twelve, King asserts that the trial court abused its discretion by admitting Exhibits 13 and 14, the two videos of King and the victim engaged in sexually

explicit conduct. He asserted at trial that the exhibits were "improperly obtained and not properly authenticated." SA1379. He reiterates that argument here. And he asserts that the Government created the videos and that they should be inadmissible.

First, we agree with the District Court that the videos were sufficiently authenticated by the testimony of Agent Coleman and the victim. The victim confirmed that King sent the videos to her Snapchat account and that she and King were the individuals engaged in sexually explicit conduct. This evidence satisfied Rule 901's requirement that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a), (b)(1). Nor do we see error in Agent Spory's testimony identifying King's voice in Exhibit 13. The victim had already identified King as the other person in the video.

## X. Sentencing Objections

King also challenges several calculations in his presentencing report.[18] He objected both before and during sentencing to a five-level enhancement under U.S. Sentencing Guideline (U.S.S.G.) § 4B1.5(b), which applies to repeat and dangerous sex offenders. It increases a defendant's offense level by five points if the offense is a covered sex crime and the "defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). The District Court determined that a pattern had been established by a preponderance of the evidence, citing both the fact that

---

[18] Our review of the District Court's interpretation of the Guidelines is plenary, and we review any underlying factual findings for clear error. *United States v. Smith*, 751 F.3d 107, 118 (3d Cir. 2014).

30

King engaged in sexual activity as depicted in the two videos and the victim's testimony that King had "paid her for sex approximately ten additional times." SA1656.

King does not take issue with the sentencing court's reliance upon the victim's testimony. He objects only to considering the two videos as having occurred on separate occasions so as to establish a pattern. Importantly, the District Court found the victim testified credibly and that a pattern had been established by the victim's testimony that she had sex with King on ten occasions. We conclude that the victim's testimony afforded a sufficient basis for the District Court to conclude that the pattern component required for the § 4B1.5(b) enhancement was met.

King also raises for the first time in his opening brief the remaining sentencing issues. Accordingly, we also review those issues for plain error. Fed. R. Crim. P. 52(b).

King contends that there was error in calculating the offense level on count one, the § 1591(a) offense. The U.S.S.G. manual instructs that guideline § 2G1.3 applies in computing the offense level for the count one conviction. Subsection (c)(1), however, directs the application of another guideline if the offense of conviction—the § 1591(a) violation—involved the sexual exploitation of a minor. U.S.S.G. § 2G1.3(c)(1). King objects to the application of the other guideline because it increased the offense level by adding points because the victim was fourteen years old at the time the offense was committed and because a sexual act was involved. In King's view, these additional points should not have been added because "count one does not involve sexually exploiting a minor by production of sexually explicit visual material." Appellant's Am. Inf. Br. 52. We see no error. Guideline § 1B1.3 allows consideration of relevant conduct

31

in computing a defendant's total offense level. For that reason, the conduct underlying the convictions on counts two and three were permissibly considered as relevant conduct for count one and warranted application of the other guideline.

King also objects to the calculation of the offense level for counts two and three. He asserts that the application of the two-point enhancement under § 2G2.1(b)(1)(B) for minors that had not "attained the age of sixteen years" was error. In his view, the enhancement should not have been applied because the Government did not prove how old the victim was in each video.

We conclude that the enhancement under § 2G2.1(b)(1)(B) did not constitute plain error. The victim was fourteen when she had sex with King for the first time. He paid her "a few hundred" dollars afterwards and continued to pay her after each of the nine other sexual encounters. SA1214. According to Agent Coleman, the latest the videos could have been produced was April 27, 2019, which was two months after the victim turned sixteen. As a result, there is a preponderance of evidence to establish that some of the persuading and enticing of the minor to engage in sexually explicit conduct for the purpose of producing visual depictions occurred before the victim turned sixteen. Because there is no authority specifying that it must be the visual depictions that precede the victim turning sixteen, we conclude that the District Court did not commit plain error in applying the two-level enhancement under § 2G1.3(b).

Finally, King objects to the District Court's failure to apply a three-point decrease under § 2X1.1(b)(1) to the computation of his offense level for count one. This downward adjustment applies to attempt offenses. The decrease applies "unless the

32

defendant completed all the acts . . . necessary for successful completion of the substantive offense." U.S.S.G. § 2X1.1(b)(1). Given the evidence of record, it is far from clear that this downward adjustment was applicable. For that reason, we conclude the failure to apply § 2X1.1(b)(1) did not constitute plain error.

## XI. Conclusion

For the reasons set out above, we will affirm the judgment of the District Court.